WOODWARD v. ELLSWORTH.

1. Illegality in a tax assessment will not upon that ground alone warrant the issuance of an injunction to restrain the sale of personal property to satisfy the taxes. The statute furnishes another remedy in such cases which is complete and adequate. Under the statute a perpetual lien only attaches by virtue of the levy to the specific property levied upon.

2. The property of a national bank organized under the act of June 3d, 1864, levied upon by a county treasurer to satisfy a tax levied after the bank has become insolvent, cannot be subjected to such demand against a claim for the property by a receiver subsequently appointed.

*Appeal from District Court of Clear Creek County.*

THIS was an action by Ellsworth, the appellee, as receiver of a national bank, to enjoin Woodward, the treasurer of Clear Creek county, from disposing of or interfering with certain personal property, belonging to the bank as it was alleged, to satisfy a tax levied subsequent to the insolvency of the bank. The complaint was demurred to, and the demurrer, as well also a motion to dissolve a temporary injunction theretofore issued, were overruled. The defendant appealed.

Mr. L. C. ROCKWELL, and Mr. W. T. HUGHES, for appellant.

Messrs. BUTLER, WRIGHT & KING, and Mr. ED. O. WOLCOTT, for appellee.

THATCHER, C. J. It is alleged in the complaint, and admitted by the demurrer that the First National Bank of Georgetown, organized under the act of Congress to provide a national currency, approved June 3, 1864, suspended business July 30th, 1877, then being insolvent; that August 18, 1877, the complainant was appointed by the comptroller of the currency receiver of said First National Bank; that within ten days thereafter he qualified as such receiver; that upon examination of the books and accounts of said bank the receiver found it had been insolvent for more than

three years previous to its suspension ; that for the year 1877 the bank was assessed for taxation upon "the sum of $25,000 as the amount of capital used by said bank over the amount invested in United States bonds;" that the sum due for taxes on said amount was the sum of one thousand and fifteen dollars ; that at the time of the suspension of the bank, Cushman, who was its president, was possessed of his own right of a cabinet consisting of rare minerals and birds ; that the said Cushman sold and assigned the same to the complainant for the benefit of creditors, and that he still has possession of the same, as assets of the bank; that Thomas Woodward, as treasurer of Clear Creek county, was, April 16, 1878, "about to distrain and levy upon said cabinet and sell the same for the purpose of collecting the said ten hundred and fifteen dollars claimed as taxes aforesaid." The court issued a temporary injunction restraining the defendant from seizing and selling the cabinet or other personal property then in the hands of the receiver. A motion to dissolve the injunction was made and denied. From the order denying the motion to dissolve, this appeal was taken. Whether the assessment and levy of the tax upon twenty-five thousand dollars of the capital stock of the bank, were legal or illegal upon the facts set out in the complaint, we need not investigate. It is sufficient upon this question to say that even if illegal, that ground alone would not ordinarily warrant the issuance of an injunction to restrain the sale of personal property to satisfy the taxes. The statute furnishes another remedy in such cases which is complete and adequate. *Price et al.* v. *Kramer* (*ante,* p. 546 ).

But it is upon an entirely different ground chiefly that equitable relief is sought. The circumstances of this case are peculiar. The personal property, the sale of which is restrained, was neither assessed nor levied upon. Under the statute, a perpetual lien only attaches by virtue of the levy to the specific property levied upon. General Laws, § 2337. Other property, however, may be distrained and

sold, but not having been levied upon, it is not affected with the statutory lien.   As therefore the tax, if legal, was merely a debt against the bank at the time the receiver was appointed, the question arises as to the status of the assets of the bank after that date.

Section 50 of the National Bank Act provides that the receiver " shall take possession of the books, records and assets of every description of such association, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, sell all the real and personal property of such association, on such terms as the court shall direct ; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders provided for by the twelfth section of this act ; and such receiver shall pay over all money so made to the treasurer of the United States, subject to the order of the comptroller of the currency, and also make report to the comptroller of the currency of all his acts and proceedings.   The comptroller shall thereupon ·cause notice to be given, by advertisement in such newspapers as he may direct, for three consecutive months, calling on all persons who may have claims against such association to present the same, and to make legal proof thereof.   And from time to time the comptroller, after full provision shall have been first made for refunding to the United States any such deficiency in redeeming the notes of such association as is mentioned in this act, shall make a ratable dividend of. the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction."

By section 47 it is provided that the *United States shall have the first and paramount lien upon all the assets* of such insolvent bank for the purpose of making good any deficiency (in the proceeds of the bonds pledged by the bank) to meet the amount expended in paying the notes of the bank.   This lien, it is further declared, shall

have the preference to all other claims whatsoever, except the necessary costs and expenses of administering the assets. In *National Bank* v. *Colby*, 21 Wall. 609, the supreme court of the United States held that the property of an insolvent national bank, attached at the suit of a creditor, before the appointment of a receiver, cannot be subjected to a sale for the payment of his demands, against the claim for the property by a receiver of the bank subsequently appointed. The court, in construing the Banking Act, says: "There is in these provisions a clear manifestation of a design on part of Congress: 1st. To secure the government for the payment of the notes, not only by requiring in advance of their issue a deposit of bonds of the United States, but by giving to the government a first lien for any deficiency that may arise on all the assets subsequently acquired by the insolvent bank; and 2d. To secure the assets of the bank for ratable distribution among its general creditors. This design would be defeated if a preference in the application of the assets could be obtained by adversary proceedings. The priority of the United States and the ratable distribution among the general creditors, so studiously provided for in the act, would in that case be lost." See, also, *Ocean National Bank* v. *Carll*, Thompson's National Bank Cases, p. 793.

Whatever might be the rights of the defendant if the statutory lien had attached to the specific property by virtue of a levy thereon prior to the insolvency of the bank, we are satisfied that, accepting as true the averments in the complaint, the court did not err in issuing the preliminary injunction. The order denying the motion to dissolve the same will be

*Affirmed.*