**CITY OF CRAIG, Colorado,
Plaintiff–Appellant,**

v.

**Joy HAMMAT, Treasurer of Moffat County; and the Board of County Commissioners of the County of Moffat, Defendants–Appellees.**

No. 88CA0747.

Colorado Court of Appeals,
Div. V.

July 26, 1990.

Rehearing Denied Sept. 27, 1990.

Certiorari Denied May 13, 1991.

Bourtai Hargrove, City Atty., Craig, for plaintiff-appellant.

Thomas C. Thornberry, Peck & Lawrence, P.C., R.H. Peck, Craig, for defendants-appellees.

Gerald E. Dahl, Denver, amicus curiae for Colorado Mun. League.

Opinion by Judge METZGER.

Plaintiff, City of Craig (City), appeals the summary judgment entered in favor of defendants, Treasurer of Moffat County and Board of County Commissioners of the County of Moffat (County). We reverse and remand with directions.

The stipulated facts are as follows. The City is a home rule city chartered under Colo. Const. art. XX. According to the terms of the charter, the City Council is required to promulgate ordinances providing for the collection of rates, fees, or charges for water, sewer, and other services furnished by the City.

Adopted in 1980, the ordinances at issue, codified as Craig Municipal Code, §§ 13.48.-050 (water), 13.16.030 (sewer), and 8.04.270 (refuse), make these utility service charges a lien upon the real property served, and authorize the city clerk to certify delinquent service charges to the county treasurer for collection as though they were taxes assessed against the real property.

The ordinance concerning unpaid water charges, Craig Municipal Code, § 13.48.050, reads as follows:

"All water charges shall also constitute a lien upon any lots, land, building or premises served by the water system, and in the event said charges shall not be paid when due, the said service may be discontinued by shutting off the water supply to said premises, or the City Clerk may certify the charge or charges to the County Treasurer of Moffat County, Colorado, and said charge or charges shall become a lien on the real property so served by said water connection and shall be collected in the manner as though they were a part of the taxes assessed against said property together with the cost of collection. All laws of the State of Colorado for the assessment and collection of general taxes and redemption of the same, shall apply."

Craig Municipal Code, § 13.16.030, concerning unpaid sewer charges and Craig Municipal Code, § 8.04.270 concerning garbage removal, contain essentially identical wording.

In 1985 and again in 1987, the City certified certain delinquent utility bills to the County for collection. Asserting that the City had no power to collect utility service fees by imposing liens analogous to tax liens, the County refused either to certify or to collect the delinquent bills.

Subsequently, the City brought this action in the district court requesting both declaratory and injunctive relief and relief in the nature of mandamus under C.R.C.P. 106(a)(2). The court granted summary judgment in favor of the County and dismissed the action. It held that the issuance of a lien is a matter of statewide concern, that the City's ordinances conflict with applicable state statutes, specifically §§ 31–15–401(1)(d)(I), 31–15–302(1)(e), 31–35–402(1)(f), and 31–35–617, C.R.S. (1986 Repl.Vol. 12B).

The City first contends that the collection of these delinquent utility service charges is a matter of local concern and that the trial court erred in ruling otherwise. We agree.

After the trial court's order was entered, our supreme court held that the collection of charges for utility services provided by a municipality is a matter of local concern. *Sant v. Stephens*, 753 P.2d 752 (Colo.1988). And, in light of that ruling, the parties agree that the City has the right to enact

ordinances for the collection of utility service charges for municipally owned utilities.

■ However, the County argues that, even though the court in *Sant v. Stephens, supra,* stated "there can be no doubt that the collection of charges for utility services provided by a municipality is a matter of local concern," the City lacks authority to collect the utility charges in the same manner as taxes. We do not agree.

■ In matters of purely local and municipal concern, an ordinance adopted by a home rule city supersedes a conflicting state statute. *Greenwood Village v. Fleming,* 643 P.2d 511 (Colo.1982). In matters of both statewide and local concern, state statutes and municipal ordinances may coexist if they do not conflict. *DeLong v. Denver,* 195 Colo. 27, 576 P.2d 537 (1978). In determining whether two pieces of legislation conflict, the critical inquiry is whether the ordinance authorizes what the statute forbids, or forbids what the statute has expressly authorized. *Aurora v. Martin,* 181 Colo. 72, 507 P.2d 868 (1973).

We have discovered no statute that prohibits a home rule city either from creating liens to secure utility charges or from providing that such liens may be certified to the county treasurer and collected as though they were taxes. Indeed, Article XX, Section 6(g), of the Colorado Constitution invests home rule municipalities with the "power to legislate upon, provide, regulate, conduct and control:

> "the assessment of property in such city or town for municipal taxation and the levy and collection of taxes thereon for municipal purposes and special assessments for local improvements; such assessments, levy and collection of taxes and special assessments to be made by municipal officials or by the county or state officials as may be provided by the charter."

Since the City's charter provides for collection, it would control over any conflicting state statute.

The trial court determined that §§ 31–15–302(1)(e) and 31–35–402(1)(f) provide the only means by which a municipality can collect delinquent utility service charges. It held: "those statutes provide that a municipality may initiate an action at law against the consumer, owner, or occupant, or can file a lien upon the property which would be by a proceeding at law or in equity, in the general nature of a mechanic's lien proceeding." We do not agree that these statutes provide the exclusive remedies. Rather, we conclude that additional collection methods are available.

Section 31–15–401(1)(d) sets out as among the powers of a municipality:

> "(I) To provide for and compel the removal of weeds, brush, and rubbish of all kinds from lots and tracts of land within such municipalities ... in such manner as such municipalities prescribe by ordinance, and to assess the whole cost thereof ... upon the lots and tracts of land from which the weeds, brush, and rubbish are removed. The assessment shall be a lien against each lot or tract of land until paid and shall have priority over all other liens except general taxes and prior special assessments.

> (II) In case such assessment is not paid within a reasonable time specified by ordinance, it may be certified by the clerk to the county treasurer who shall collect the assessment, together with a ten percent penalty for cost of collection, in the same manner as other taxes are collected. The laws of this state for assessment and collection of general taxes, including the laws for the sale and redemption of property for taxes, shall apply to the collection of such assessments."

Section 31–35–617 provides:

> "In the event any user of said sewerage system neglects, fails, or refuses to pay the rates and charges fixed by said governing body for the connection with and use of said sewer, said user shall not be disconnected from said sewerage system or refused the use of said sewer unless the user is outside the municipal limits, but the rates and charges due therefor may be certified by the clerk or the proper authority of the district to the board of county commissioners of the county in

which said delinquent user's property is located and shall become a lien upon the real property so served by said sewer connection. The amount due shall be collected in the manner as though they were part of the taxes."

In regard to these statutes, the trial court found that each should be interpreted to pertain only to assessments which would enhance the value of the property. Thus, it noted, "weed, brush, and rubbish removal [as provided by §§ 31–15–401(1)(d)(I) & (II) ] from the lot or property itself (usually vacant) does, in fact, enhance the value of the underlying real property and is thus entitled to priority. Normal weekly garbage collection does not rise to that level." It interpreted § 31–35–617 "as pertaining to sewer tap fees and not to ongoing usage charges, assessed on a monthly basis." We conclude that such interpretations are overly restrictive.

■■■ A statute must be read and considered as a whole in order to ascertain the legislative intent in passing it. *People v. District Court*, 713 P.2d 918 (Colo.1986). And, if the language of a statute is plain and its meaning is clear, it must be applied as written. *Heagney v. Schneider*, 677 P.2d 446 (Colo.App.1984). Every word of a statute must be given effect, to the extent possible, consistent with the intent and purposes of the General Assembly. *Johnston v. City Council*, 177 Colo. 223, 493 P.2d 651 (1972). Words and phrases must be construed according to their familiar and generally accepted meaning. Section 2–4–101, C.R.S. (1980 Repl.Vol. 1B).

Here, the language of the statutes is plain and the meaning is clear. Section 31–15–401(1)(d)(II) empowers a municipality to direct the city clerk to certify to the county treasurer the cost of removal of weeds, brush, and rubbish. The county treasurer, in turn, is to collect these funds in the same manner as other taxes are collected. The city ordinance authorizes the imposition of charges for removal of garbage, rubbish, or refuse.

"Rubbish" is defined as: "Miscellaneous useless valueless waste or rejected matter: trash, debris." *Webster's Third Interna-*

*tional Dictionary* 1983. "Garbage" includes "refuse of any kind." *Webster's Third International Dictionary* 935. We see no significant difference in meaning between "rubbish" and "garbage." And, even if such a difference exists, the city ordinance's reference to garbage is more inclusive than the state statute's reference to "rubbish."

Since the ordinance does not authorize what the statute forbids nor forbid what the statute has expressly authorized, no conflict between the two exists. *Aurora v. Martin, supra*. Thus, the trial court's conclusion must be modified.

As well, in discussing collection procedures for users of sewage systems, the provisions of § 31–35–617 are quite similar to those contained in the city ordinance. This statute authorizes the collection of sewer user fees "as though they were part of the taxes," and provides that the "rates and charges due" may be certified by the city clerk to the county board of commissioners for collection by the county treasurer. The ordinance authorizes the city clerk to certify the charges to the county treasurer. Again, because the ordinance does not authorize what the statute forbids nor forbid what the statute authorizes, no conflict exists. *Aurora v. Martin, supra*.

Finally, we note that § 31–20–105, C.R.S. (1986 Repl.Vol. 12B) provides independent support for the City's position concerning the collection methods for all the charges at issue here. It provides:

"Any municipality, in addition to the means provided by law, if by ordinance it so elects, may cause any or all delinquent charges, assessments, or taxes made or levied to be certified to the treasurer of the county and be collected and paid over by the treasurer of the county in the same manner as taxes are authorized to be by this title."

The obligation of the county treasurer to collect these charges is mandatory. *See* § 31–20–107, C.R.S. (1986 Repl.Vol. 12B); *City of Highlands v. Johnson*, 24 Colo. 371, 51 P. 1004 (1897). That being the case, we conclude that the collection procedures in §§ 31–15–302(1)(e) and 31–35–

402(1)(f) are not exclusive and therefore, the County's arguments to the contrary must fail.

In light of this disposition, we need not address the parties' remaining contentions.

Accordingly, the judgment is reversed, and the cause is remanded for entry of judgment in favor of the City.

JONES and MARQUEZ, JJ., concur.